UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.:
CASSANDRA PIERRE,

                                    Plaintiff,

        -against-                                         **COMPLAINT**

TUSK ENTERPRISES, LLC d/b/a RHINO
MEDICAL SERVICES AND HOSPITALISTS PLUS,          **PLAINTIFF DEMANDS**
PREMISE HEALTH, and THE GOLDMAN SACHS             **A TRIAL BY JURY**
GROUP, INC.,

                                    Defendants.
------------------------------------------------------------------X

        Plaintiff, Cassandra Pierre, by and through her attorneys, PHILLIPS & ASSOCIATES,

ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and

belief, as follows:

                                    **Nature of the Case**

1.      Plaintiff complains pursuant to the New York State Human Rights Law, New York

        Executive Law § 296, *et. seq.* ("NYSHRL"); and the New York City Human Rights Law,

        New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"). Plaintiff seeks

        damages to redress the injuries Plaintiff has suffered as a result of being discriminated

        against on the basis of her disability (severe ear infection), failing to provide a reasonable

        accommodation and retaliating against Plaintiff, resulting in her unlawful termination.

2.      Plaintiff also complains pursuant to New York Labor Law § 196-B, *et seq.* ("NYLL") and

        seeks damages to redress the injuries she has suffered as a result of Defendants' failure to

        provide Plaintiff with sick leave pay, and retaliation for complaining of said failure to

        compensate for sick leave.

**Jurisdiction and Venue**

3.  Jurisdiction of this Court is proper under 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of the State of New York.

**Procedural Prerequisites**

5.  Contemporaneously with the filing of this Complaint, Plaintiff mailed a copy of the Complaint to the New York City Commission on Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York ("Corporation Counsel") pursuant to the notice requirements of Section 8-502 of the New York City Administrative Code. A copy of the transmittal letter to the NYCCHR and the Corporation Counsel is annexed hereto as Exhibit A.

**Parties**

6.  Plaintiff is a resident of the County of Kings and State of New York.

7.  At all times material, Defendant TUSK ENTERPRISES, INC. d/b/a RHINO MEDICAL SERVICES AND HOSPITALISTS PLUS (hereinafter "RHINO") is a domestic business corporation organized under the laws of the State of Texas and operating in the State of New York. The physical address of Defendant RHINO's principal place of business is located at 2000 E Lamar Boulevard, Suite 250, Arlington, Texas 76006.

8.  At all times material, Defendant RHINO owned, operated and controlled a healthcare staffing company which contracts and provides a variety of medical services to various companies throughout the United States.

9.  At all times material, Defendant PREMISE HEALTH (hereinafter "PREMISE") is a domestic business corporation organized under the State of Tennessee and operating in the State of New York.  The physical address of Defendant PREMISE's principal place of business is located at 550 Maryland Way, Suite 120, Brentwood, Tennessee 37027.

10. At all times material, Defendant PREMISE owned, operated and controlled a healthcare staffing company which contracts and provides a variety of medical services to various companies throughout the United States.

11. At all times material, Defendant THE GOLDMAN SACHS GROUP, INC. (hereinafter "GOLDMAN") is a foreign business corporation organized under the laws of the State of Delaware and operating in the State of New York.  The physical address of Defendant GOLDMAN's principal place of business is located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

12. At all times material, Defendant GOLDMAN owned, operated and controlled an international investment banking and securities company providing financial services to clients worldwide.

13. At all times material, Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN were integrated and/or joint employers of Plaintiff as they had an interrelation of operations, common management, and centralized control of labor relations.

14. At all times material, Defendant RHINO and Defendant PREMISE were companies that contracted services for various clients, including Defendant GOLDMAN.

15. At all times material, Defendant GOLDMAN contracted with Defendant PREMISE and Defendant RHINO to perform COVID-19 testing for its employees.

16. At all times material, Plaintiff's services as a Registered Nurse were contracted by Defendant RHINO and Defendant PREMISE to work for Defendant GOLDMAN.

17. At all times material, Plaintiff was assigned by Defendant RHINO to perform COVID-19 testing at Defendant GOLDMAN, located at 200 West Street, 10th Floor, New York, New York 10282 (hereinafter "the Location").

18. At all times material, Defendant RHINO had four (4) or more employees in each calendar year.

19. At all times material, Defendant RHINO was Plaintiff's employer under the NYSHRL.

20. At all times material, Defendant RHINO was Plaintiff's employer under the NYCHRL.

21. At all times material, Defendant RHINO was Plaintiff's employer under the NYLL.

22. At all times material, Defendant PREMISE had four (4) or more employees in each calendar year.

23. At all times material, Defendant PREMISE was Plaintiff's employer under the NYSHRL.

24. At all times material, Defendant PREMISE was Plaintiff's employer under the NYCHRL.

25. At all times material, Defendant PREMISE was Plaintiff's employer under the NYLL.

26. At all times material, Defendant GOLDMAN had four (4) or more employees in each calendar year.

27. At all times material, Defendant GOLDMAN was Plaintiff's employer under the NYSHRL.

28. At all times material, Defendant GOLDMAN was Plaintiff's employer under the NYCHRL.

29. At all times material, Defendant GOLDMAN was Plaintiff's employer under the NYLL.

30. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN are sometimes referred to as "Defendants."

31.  At all times material, Plaintiff was an employee and/or independent contractor of Defendants.

32.  At all times material, all parties herein worked and/or continue to be employed by Defendants.

**Plaintiff's Disabilities**

33.  At all times material, Plaintiff suffered from a severe ear infection.

34.  As a result, Plaintiff had excruciating pain from her right ear, was unable to hear from her right ear, had a slight fever, had fluid leaking out of her right ear, all of which was accompanied with a severe headache.

35.  Plaintiff's severe ear infection was a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques within the meaning of NYSHRL § 292(21).

36.  Plaintiff's severe ear infection was a physical, medical, mental or psychological impairment, as defined within the NYCHRL as "(a) [a]n impairment of any system of the body; including, but not limited to, the neurological system, the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive system and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or (b) [a] mental or psychological impairment."

37.  As such, Plaintiff has and/or had a disability under the NYSHRL.

38.  As such, Plaintiff has and/or had a disability under the NYCHRL.

39.   Plaintiff was able to perform the necessary functions of her position with or without a reasonable accommodation.

## **Material Facts**

*Plaintiff Worked as an Employee for Defendants*

40.   On or about November 23, 2020, Plaintiff was hired by Defendant RHINO for the position of a full-time Registered Nurse, earning approximately $45.00 per hour.

41.   Plaintiff was hired by Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN, and was paid by Defendant RHINO.

42.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN all controlled the terms and conditions of Plaintiff's employment.

43.   Plaintiff worked full time at approximately forty (40) hours per week.

44.   Upon information and belief, at a full-time working schedule, Plaintiff could have earned an annual salary of approximately $93,600 per year.

45.   Plaintiff was a hardworking employee and always performed her duties well.

46.   Plaintiff never received any written or verbal warnings regarding her job performance or behavior.

47.   Plaintiff was misclassified by Defendants as an independent contractor.

48.   The nature of Plaintiff's work for Defendants created an employer/employee relationship based on various factors.

49.   Defendants controlled the manner and the means by which Plaintiff performed her work.

50.   For example, at all times material, Defendants created a work schedule for Plaintiff and required Plaintiff to submit time sheets for payment.

51. At all times material, Defendants provided tools and equipment for Plaintiff to perform her job duties.

52. At all times material, Defendants controlled Plaintiff's rate of pay.

53. Plaintiff's daily work was supervised by Defendants.

54. Plaintiff typically worked for Defendants with a full-time schedule.

55. While working for Defendants, Plaintiff typically worked full-time and, at times, more than forty hours per week. As such, Plaintiff received overtime compensation from Defendants.

56. Plaintiff's income earned while working for Defendants was reported by Defendants on an IRS Form W-2.

*Plaintiff's Employment with Defendants*

57. On or about December 7, 2020, Plaintiff began working at the Location as a Registered Nurse conducting COVID-19 testing for Defendant GOLDMAN's employees.

58. On or about December 16, 2020, Holly McKinney, Account Manager for Defendant RHINO, contacted Plaintiff and inquired whether Plaintiff would be interested in extending her contract with Defendant GOLDMAN through March 5, 2021. Plaintiff agreed.

59. On or about January 19, 2021, Ms. McKinney texted Plaintiff and stated "Goldman sachs has asked if you would like to extend your contract through June 4th?" Plaintiff once again agreed.

60. On or about January 19, 2021, Ms. McKinney e-mailed Plaintiff her employment contract ("the Contract"). The Contract included Plaintiff's hourly rate of pay and overtime rate of pay.  The Contract also included the location where Plaintiff would be working, by specifically stating "Worksite: Premise Health – Goldman Sachs[,] 200 West St. 10th Floor[,] New York, NY 10282[.]"

61. On or about January 20, 2021, Plaintiff e-mailed Ms. McKinney and asked for an increase in pay which would be similarly comparable to what other Registered Nurses in her position would be making.

62. On or about January 21, 2021, Plaintiff texted Ms. McKinney inquiring about the status of the pay raise request from the day prior.  Ms. McKinney responded "It's being discussed." Ms. McKinney followed up to the request by stating "You do know the professional way to request a pay raise is through a one on one conversation with me."

63. On or about January 25, 2021, Plaintiff contacted Ms. McKinney stating that she would be leaving at 3:00 P.M. for a doctor's appointment.

64. On or about January 26, 2021, Plaintiff texted Ms. McKinney asking if Defendant RHINO would be increasing the pay of Plaintiff and her coworkers.

65. Shortly thereafter, Plaintiff and her co-workers received an e-mail from Ms. McKinney informing them of a pay raise to $55/hour starting February 1, 2021.  Along with the increase in pay, Ms. McKinney stated that Defendant GOLDMAN was offering a $350 bonus for a three-month contract commitment.  Plaintiff was thrilled.

66. On or about January 26, 2021, Plaintiff received an updated contract including the pay raise and bonus.

67. On or about January 31, 2021, Plaintiff e-mailed Ms. McKinney and informed her that she is unsure if she would be able to make it to work the following day due to the impending snowstorm that was going to hit the New York City Metropolitan area.

68. On or about February 1, 2021, Plaintiff e-mailed Ms. McKinney that she was unable to make it to work due her train not running due to the snowstorm.

69. On or about February 15, 2021, Plaintiff e-mailed Ms. McKinney stating that she had an ear infection and would not be able to come into work.

70. On or about February 18, 2021, Plaintiff noticed that her ear infection was getting worse. As such, Plaintiff e-mailed Ms. McKinney prior to coming into work and stated, "unfortunately I will be out for the rest of the week due to a [sic] serious ear infection."

71. Later that day, Plaintiff was feeling better and contacted Ms. McKinney stating that she would be coming into work the following day.

72. On or about February 19, 2021, Plaintiff provided Ms. McKinney with her timesheet via e-mail.

73. On or about February 22, 2021, in response to Plaintiff's timesheet, Ms. McKinney stated "Just so that you are aware and there are no surprises, we do not pay for sick days so the 20 hours has been removed from your timesheet."

74. Frustrated, Plaintiff responded "I would like a full contract where it is stated we are not paid for sick time because this was not written in any contract that I agreed too moving forward. As per New York State law, if you work a certain amount of hours, you accumulate sick time. Thank you."  Ms. McKinney stated, "We are looking into this and will let you know as soon as we get an answer."

75. On or about February 26, 2021, Plaintiff had not heard from Ms. McKinney in regards to her sick time request.  Plaintiff once again followed up with Ms. McKinney in an e-mail, however, never heard back from her.

76. On or about March 1, 2021, Plaintiff contacted Ms. McKinney and stated "I will not be in for work Thursday March 4th. I previously e-mailed you last week about my sick time but I have not received a response from you."  Ms. McKinney responded to Plaintiff's e-mail by

stating "I will pass this along[.] I am still working on reviewing information so that I can properly reply to your previous email."

77. On or about March 8, 2021, Plaintiff contacted Ms. McKinney and informed her that she would be leaving on March 12, 2021, at 12:30 P.M. for a doctor's appointment.

78. Shortly thereafter, Plaintiff received an e-mail from Ms. McKinney terminating her employment.  Within the e-mail, Ms. McKinney stated "We have come to the decision to terminate your employment with Premise Health – Goldman Sachs NYC for the following: Since January you have called out of work 5 days and left early 3 days. The inability to work your contracted schedule leaves Goldman Sachs short-handed and is not conducive to the success of the COVID screening program.  This has resulted in the determination to terminate your employment."

79. Approximately ten minutes after receiving the termination e-mail from Ms. McKinney, Debbie Conway, a Clinic Scheduler of the Northeast Region for Defendant PREMISE responded, replied to the email: "I thought you were ending her on 3/12!"

80. Upon information and belief, Ms. Conway did not intend to send her email to Plaintiff.

81. Plaintiff was subjected to a discriminatory and retaliatory termination.

82. It is clear, due to the close temporal proximity between Plaintiff informing Defendants of her severe ear infection, her requests of sick leave and her subsequent termination, that Defendants unlawfully retaliated against Plaintiff and terminated her due to her disability.

83. It is clear, due to the close temporal proximity between Plaintiff complaining to Defendants about not receiving sick leave pay and her subsequent termination, that Defendants unlawfully retaliated against Plaintiff and terminated her due to her complaints about not receiving sick leave pay.

84.   The above are just some of the acts of discrimination that Plaintiff experienced while employed by Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN.

85.   But for Plaintiff's actual and/or perceived disability and requests for sick leave, Plaintiff would not have been terminated by Defendant.

86.   At no time did Defendants ever engage in, or attempt to engage in, an interactive process regarding Plaintiff's disabilities or reasonable accommodation.

87.   Defendants were on notice of Plaintiff's disabilities, whether actual and/or perceived.

88.   At all times material, Defendants paid Plaintiff as an employee of Defendants and deducted income tax from her paychecks and contributed to payroll as to Plaintiff's earned income.

89.   If Plaintiff was not misclassified, then in the alternative, Plaintiff was a natural person employed as an independent contractor to carry out work in furtherance of Defendants' business enterprise.

90.   As an employee who was misclassified by Defendants as an independent contractor, Plaintiff is protected under the New York City Human Rights Law.

91.   If, in the alternative, Plaintiff was not misclassified, Plaintiff was protected by the New York City Human Rights Law as an independent contractor during the time she worked for Defendants.

92.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff.  As a result, Plaintiff suffers loss of rights, and emotional distress.

93.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN's actions and conduct were intentional and intended to harm Plaintiff.

94.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

95.   Plaintiff was repulsed, offended, humiliated, belittled and disgusted by this blatantly unlawful conduct and termination.

96.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN acted intentionally and intended to harm Plaintiff.

97.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN acted maliciously, willfully, outrageously, and with full knowledge of the law.

98.   Plaintiff has also suffered future emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

99.   As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

**First Cause of Action for Discrimination**
**<u>Under the New York State Executive Law</u>**

100.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

101.   <u>New York State Executive Law</u> § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

102.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section hereto as set forth.

103.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Second Cause of Action for Discriminatory Discharge**
**Under the New York State Executive Law**

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

105. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer
> or licensing agency, because of an individual's age, race, creed,
> color, national origin, sexual orientation, military status, sex,
> **disability**, predisposing genetic characteristics, familial status,
> marital status, or domestic violence victim status, to refuse to hire
> or employ or to bar or to discharge from employment such
> individual or to discriminate against such individual in
> compensation or in terms, conditions or privileges of employment.

106. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

107. Plaintiff is entitled to the maximum amount allowed under this statute.

**Third Cause of Action for Failure to Provide a Reasonable Accommodation**
**Under the New York State Executive Law**

108. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

109. New York State Executive Law § 296(3)(a) provides that:

> It shall be an unlawful discriminatory practice for an employer,
> licensing agency, employment agency or labor organization to
> refuse to provide reasonable accommodations to the known
> disabilities, or pregnancy-related conditions, of an employee,
> prospective employee or member in connection with a job or
> occupation sought or held or participation in a training program.

110. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

111. Plaintiff is entitled to the maximum amount allowed under this statute.

**Fourth Cause of Action for Retaliation**

**<u>Under the New York State Executive Law</u>**

112.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113.   <u>New York State Executive Law</u> § 296(7) provides that:

It shall be an unlawful discriminatory practice:

(e)   For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

114.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the sections cited herein as set forth.

115.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Fifth Cause of Action for Discrimination**
**<u>Under the New York City Administrative Code</u>**

116.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117.   <u>New York City Administrative Code</u> § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

118.   Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section hereto as set forth.

119.   Plaintiff is entitled to the maximum amount allowed under this statute.

**Sixth Cause of Action for Discrimination**
**Under the New York City Administrative Code**

120.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

121.   <u>New York City Administrative Code</u> § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor.

122.   <u>New York City Administrative Code</u> § 8-107(13) states, in pertinent part,

    a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions 1 and 2 of this section.

    b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:

        (1)   The employee or agent exercised managerial or supervisory responsibility; or

        (2)   The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        (3)   The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of an acquiesced in such conduct.

123. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section hereto as set forth.

124. Plaintiff is entitled to the maximum amount allowed under this statute.

**Seventh Cause of Action for Discriminatory Discharge
Under the New York City Administrative Code**

125. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

126. New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

127. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section hereto as set forth.

128. Plaintiff is entitled to the maximum amount allowed under this statute.

**Eighth Cause of Action for Failure to Provide a Reasonable Accommodation
Under the New York City Administrative Code**

129. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

130. New York City Administrative Code § 8-107(15) states, in pertinent part:

> (a) Requirement to make reasonable accommodation to the needs of persons with disabilities. Except as provided in paragraph (b), it is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in

question provided that the disability is known or should have
been known by the covered entity.

131. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

132. Plaintiff is entitled to the maximum amount allowed under this statute.

**Ninth Cause of Action for Retaliation**
**Under the New York City Administrative Code**

133. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

134. New York City Administrative Code § 8-107(7) provides that it shall be unlawful

discriminatory practice: "For an employer . . . to discriminate against any person because

such person has opposed any practices forbidden under this chapter. . ."

135. Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

136. Plaintiff is entitled to the maximum amount allowed under this statute.

**Tenth Cause of Action for a Violation of Sick Leave Pay**
**Under the New York Labor Law**

137. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

138. New York Labor Law § 196-B provides, in pertinent part, that:

> (1) Every employer shall be required to provide its employees with
> sick leave as follows: (a) For employers with four or fewer
> employees in each calendar year, each employee shall be provided
> with up to forty hours of unpaid sick leave in each calendar year…
>
> (b) For employers with between five and ninety-nine employees in
> any calendar year, each employee shall be provided with up to forty
> hours of paid sick leave in each calendar year; and (c) For employers
> with one hundred or more employees in any calendar year, each

employee shall be provided with up to fifty-six hours of paid sick
leave each calendar year.

139.  Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

140.  Plaintiff is entitled to the maximum amount allowed under this statute.

## Eleventh Cause of Action for Retaliation
## Under the New York Labor Law

141.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

142.  New York Labor Law § 196-B(7) provides that:

> No employer or his or her agent, or the officer or agent of any
> corporation, partnership, or limited liability company, or any other
> person, shall discharge, threaten, penalize, or in any other manner
> discriminate or retaliate against any employee because such
> employee has exercised his or her rights afforded under this section,
> including, but not limited to, requesting sick leave and using sick
> leave, consistent with the provisions of section two hundred fifteen
> of this chapter.

143.  Plaintiff complained to Defendant RHINO, Defendant PREMISE and GOLDMAN about

violations of the New York Labor Law, specifically the failure to pay for sick leave.

144.  As a result of these complaints, Defendant RHINO, Defendant PREMISE and Defendant

GOLDMAN terminated Plaintiff.

145.  Defendant RHINO, Defendant PREMISE and Defendant GOLDMAN violated the section

hereto as set forth.

146.  Plaintiff is entitled to the maximum amount allowed under this statute.

## Jury Demand

147.  Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by the <u>New York State Human Rights Law</u>, New York State Executive Law § 296, *et seq.*; and the <u>New York City Administrative Code</u>, § 8-107, *et seq.*, in that Defendants discriminated against on the basis of her disability (severe ear infection), failed to provide a reasonable accommodation and retaliated against Plaintiff, resulting in her unlawful termination.

B.     Declaring that Defendants engaged in unlawful employment practices prohibited by the New York Labor Law by failing to pay Plaintiff earned sick leave pay;

C.     Declaring that Defendants illegally retaliated against Plaintiff for complaining to Defendants about violations of the NYLL;

D.     Awarding damages to Plaintiff to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

E.     Awarding Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

F.     Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

G.     Awarding Plaintiff punitive damages;

H.     Awarding Plaintiff liquidated damages as a result of Defendants' failure to pay Plaintiff earned sick leave pay;

I.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

J.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and

proper to remedy Defendants unlawful employment practices.

Dated:  New York, New York
         September 30, 2021

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                    By:     _____
                            Steven Fingerhut, Esq.
                            *Attorneys for Plaintiff*
                            45 Broadway, Suite 430
                            New York, New York 10006
                            (212) 248-7431
                            sfingerhut@tpglaws.com